IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:04-CR-3-FL
NO. 5:05-CV-828-FL

| | |
|---|---|
| GEOFFREY H. SIMMONS, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| ) | **MEMORANDUM & RECOMMENDATION** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This matter is before the court on Petitioner Geoffrey H. Simmons, Jr.'s motion pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence based on his allegations of ineffective assistance of counsel. [DE-29]. Respondent filed a motion to dismiss Petitioner's 28 U.S.C. § 2255 action for failure to state a claim upon which relief may be granted. [DE-36]. A hearing was held on August 23, 2007, regarding Respondent's motion. Accordingly, this matter is ripe for adjudication.

## STATEMENT OF THE CASE

Petitioner pleaded guilty on April 19, 2004, to the charges of possession with intent to distribute more than 500 grams of cocaine, 50 grams or more of crack cocaine and 14 pounds of marijuana, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). As a result of this guilty plea, on November 16, 2004, the Honorable Chief Judge Louise Flanagan sentenced Petitioner to a 170 month term of imprisonment. Judgment was entered against Petitioner on November 23, 2004. Petitioner failed to appeal this judgment.

On November 29, 2005, Petitioner signed his motion to vacate under Section 2255,

which was not docketed with the court until December 5, 2005. [DE-29]. In his petition, Petitioner alleges that he received ineffective assistance of counsel from his lawyer, Geoffrey H. Simmons, Sr. ("Simmons"), because, among other reasons, his lawyer failed to file a notice of appeal. By Order dated April 20, 2007, the District Court referred Petitioner's ineffective assistance of counsel claim for a hearing to determine: (1) at what point in time Petitioner, through the exercise of due diligence, should have discovered his counsel's failure to file an appeal; and (2) if the court concludes that the petition was timely filed, whether Petitioner's counsel provided ineffective assistance of counsel by refusing to file an appeal at Petitioner's request. [DE-40].

## FINDINGS OF FACT

The court held an evidentiary hearing on August 23, 2007, regarding the timing of Petitioner's appeal and his allegation that his counsel failed to file a timely appeal after being asked to do so. At the hearing, the court received testimony from Petitioner, Petitioner's grandmother, Evelyn Blackmore Duck, as well as Simmons, Petitioner's counsel during his plea and sentencing.

### A. Testimony of Geoffrey H. Simmons, Jr.

Petitioner testified at the hearing that he pleaded guilty to cocaine, crack cocaine, marijuana and gun charges on April 19, 2004 and was sentenced to a 170 month term of imprisonment. He stated that Simmons was his lawyer during his plea agreement and at sentencing. In addition, Petitioner testified that he considers Simmons, Sr. to be his father, as Simmons, Sr. was married to his mother for a period of time and Petitioner is named after Simmons, Sr., although Simmons Sr. is not his biological father and never legally

adopted him. Petitioner paid Simmons to represent him.

Petitioner stated that after he was sentenced, he asked Simmons, Sr., to appeal his sentence because he was unhappy that Chief Judge Flanagan found an enhancement in his presentence report for assault on a government official and included it in calculating his guideline range. Before sentencing Simmons, Sr. wrote a letter to the probation office objecting to the enhancement. In addition, Simmons, Sr. objected to that enhancement at the sentencing hearing but Petitioner did not believe that it was addressed as it should have been, specifically that Simmons did not aggressively argue the objection. Petitioner stated that he was very upset that the enhancement was considered by Chief Judge Flanagan and that he directed Simmons, Sr. to appeal his sentence because of that enhancement.

Petitioner testified that Simmons, Sr. had stated that he would come to the county jail to speak with Petitioner about Petitioner's sentencing and a possible appeal. However Simmons, Sr. never visited Petitioner while he was in the Pitt County Detention Center. Petitioner stated that he next talked to Simmons, Sr. on November 29, 2004, when he was transferred to Tidewater Regional Jail. During that telephone conversation, Petitioner stated that he told Simmons, Sr. that he had been moved to Tidewater Regional Jail in Virginia, and that Simmons, Sr. would not be able to visit Petitioner in Greenville to discuss the appeal. Petitioner stated that Simmons, Sr. told Petitioner on the phone that he would "take care of it" and he quoted Petitioner a price of $2,000 to cover the appeal. Petitioner told Simmons, Sr. that his grandmother would be getting in contact with Simmons, Sr. and that arrangements would be made to pay him.

Petitioner testified that from that point on, he was under the impression that
3

Simmons, Sr. had noticed an appeal in the case because he said he would "take care of it" and because he quoted a price of $2,000 for the appeal work.

The next time that Petitioner stated that he tried to get in touch with Simmons, Sr. was in mid-December 2004, after he had been moved to the Petersburg Correctional Facility and was released into the prison population. Petitioner stated that he left a message with a secretary at Simmons, Sr.'s office telling her that he had not received any documentation regarding his appeal. Petitioner then called Simmons, Sr. again sometime in the first few weeks of January 2005. Petitioner testified that he talked to Simmons, Sr. and told Simmons, Sr. that he had not received any paperwork pertaining to his appeal. Petitioner stated that Simmons, Sr. asked Petitioner why he wanted to appeal. Petitioner stated that he told Simmons, Sr. that he wanted to appeal the assault enhancement. Petitioner testified that Simmons, Sr. told Petitioner that he had no right to appeal because he waived his right to appeal in the plea agreement. The conversation got heated and that was the last time that Petitioner stated that he talked to Simmons, Sr. for quite a while. Petitioner admitted that in early January, after that telephone conversation with Simmons, Sr., he had actual knowledge that Simmons, Sr. had not filed an appeal and had no intention of filing an appeal on his behalf.

After the January telephone conversation, Petitioner wrote a letter to Simmons, Sr. explicitly requesting that he appeal his sentence to the Fourth Circuit. He sent the letter certified mail with return receipt. Petitioner stated that he never received a response to his letter. Petitioner also stated that his family paid money to Simmons, Sr. for the appeal.

Petitioner stated that he worked in the law library of the prison starting in January of 2005 and gained some knowledge of the court system at that time. He further stated

4

that he did not begin to work on his 2255 motion until approximately two weeks before he signed the final document on November 29, 2005. Petitioner stated that getting copies made in the prison and getting documents notarized took a number of days.

Petitioner stated that at the time he mailed his 2255 motion, the Petersburg Correctional Facility required that prisoners give the documents to their case managers, who would weigh the mail and then send it out. Petitioner also stated that while he was in the Bureau of Prisons, he had no access to PACER or any other online system to track the status of his appeal. Petitioner testified that his only means of receiving information regarding the status of his case was by receiving legal mail at the prison. In addition, Petitioner stated that he was unsure of the deadlines for filing a direct appeal and a 2255 motion but thought he had a year to file a direct appeal and had additional time to file a 2255 motion because of the Supreme Court decision of United States v. Booker, 543 U.S. 220 (2005).

### B. Testimony of Evelyn Blackmore Duck

Next, Petitioner's grandmother, Evelyn Blackmore Duck ("Dr. Duck"), testified. She stated that she had helped Petitioner in hiring Simmons, Sr., and had paid a retainer and fee to Simmons, Sr. for his sentencing. In addition, Dr. Duck stated that she paid Simmons, Sr. an additional $1,400 in cash to appeal Petitioner's sentence in the spring of 2005, after Petitioner was sentenced.

### C. Testimony of Geoffrey Simmons, Sr.

Simmons, Sr. testified that he has been practicing law for 30 years in the Raleigh area, with 75% of his practice involving criminal work. He also stated that he had

5

extensive experience in representing criminal clients in federal court. Simmons, Sr. stated that he was initially reluctant to take the case, but because his ex-wife, Petitioner's mother, asked him to represent Petitioner, he eventually decided to take the case. He admitted that he received a retainer and fee up front for his legal services.

Simmons, Sr. stated that he reviewed the plea agreement with Petitioner on many occasions, probably as many as ten to fifteen times. After discussing the plea agreement, including the standard waiver of appeal provision, Petitioner decided to plead guilty. Simmons, Sr. testified that Petitioner received a much reduced sentence for providing substantial assistance to the District Attorney and the Assistant United States Attorney. The presentence report provided Petitioner with a guideline range of 322 to 380 months. However, because of his cooperation with the state and federal government, he was sentenced to 170 months.

Simmons, Sr. also stated that Petitioner wanted to object to an enhancement for assaulting a government official that was in his presentence report. Simmons, Sr. stated that he did object to the enhancement and wrote a letter to Chief Judge Flanagan, noting his reasons for objecting. However, at the sentencing hearing, the probation officer stated that for various reasons the enhancement was appropriate. The probation officer also stated that whether or not the enhancement applied, Petitioner's guideline range would remain the same because Petitioner was a career offender. Accordingly, Chief Judge Flanagan adopted the proposed guideline range and Simmons, Sr. suggested to Petitioner that he not bring up the enhancement issue again.

After sentencing, Petitioner was very upset because Chief Judge Flanagan

accepted the enhancement for assaulting a government official. Simmons, Sr. did not talk to Petitioner directly after sentencing. However, he stated that he talked to Petitioner on the phone approximately 20 times after sentencing. Mainly, they discussed ways in which to receive a possible further reduction in his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure, which provides that the government can make a motion within a year of sentencing requesting a reduction in a defendant's sentence if the defendant has provided substantial assistance to the government. Fed. R. Crim. P. 35(b)(1). Petitioner provided additional information to the government, but the government received the same information from numerous sources, and so the information was not deemed sufficient to receive a Rule 35 reduction in sentence.

Simmons, Sr. stated that he and Petitioner then switched strategies. They tried to enlist the help of Petitioner's fiancee, Vanangela Hawkins ("Hawkins"), to participate in a third-party assistance arrangement with the government on Petitioner's behalf. Simmons, Sr. testified that he talked with Hawkins on a daily basis about working for the government to make controlled buys of drugs so that the government could arrest other drug dealers. Simmons, Sr. also stated that he not only talked to her on the phone, but met her at Dr. Duck's house on numerous occasions to discuss her assistance. Hawkins had made contact with some alleged drug dealers that the government was interested in apprehending. However, Hawkins and Petitioner had a serious argument that resulted in her decision to stop working for the government. Simmons, Sr. stated that he requested the additional $1,400 from Dr. Duck because of his efforts with Hawkins to obtain a Rule 35 reduction in sentence for Petitioner.

Simmons, Sr. could not remember if he received the February 1 letter, in which Petitioner requested that Simmons, Sr. appeal his case to the Fourth Circuit. However, Simmons, Sr. stated that it was his understanding that Petitioner wanted to pursue a Rule 35 motion rather than directly appeal his sentence. In January, Simmons, Sr. remembered telling Petitioner that he had waived his right to appeal. He also testified that Petitioner did not request an appeal before January or February of 2005.

Simmons, Sr. admitted that he had sent no letters to Petitioner after sentencing, and had not corresponded with anyone regarding any issue in the case after sentencing. He admitted that there was no documentation in the case file after November 2004, Petitioner's sentencing date.

## DISCUSSION

This case was referred to the undersigned to conduct an evidentiary hearing on two issues: (1) to determine at what point in time Petitioner, through the exercise of due diligence, should have discovered his counsel's failure to file and appeal; and (2) if the petition was timely filed, then to determine whether Petitioner's counsel provided ineffective assistance by refusing to file an appeal. The court will turn to each issue.

A. <u>Statute of Limitations under the AEDPA and Exercise of Due Diligence</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), established a one-year statute of limitations for motions filed under Section 2255. See 28 U.S.C. § 2255. The one-year limitations period begins to run from the "latest of":

(1) the date on which the judgment of conviction becomes final;

8

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Defense counsel, at the evidentiary hearing, argued that the fourth prong of Section 2255 applies in this case. Accordingly, counsel asserted, the one-year state of limitations should run, not from the date on which the judgment became final, but the date on which a person exercising due diligence would have realized that an appeal had not been filed. The court agrees that the fourth prong of Section 2255 applies and that the one-year limitations period should run from the date on which the facts supporting Petitioner's claim of ineffective assistance of counsel could have been discovered through due diligence.

Accordingly, the court must determine when Petitioner should have discovered, through the exercise of due diligence, that his lawyer had not filed an appeal. Petitioner actually discovered that Simmons, Sr. had not filed his appeal in January 2005, less than two months after the judgment was entered on November 23, 2004. Some courts have held that a two month delay in inquiring about the status of an appeal is not beyond the exercise of due diligence. See, e.g., Granger v. Hurt, 90 Fed. Appx. 97, 100 (6th Cir. Jan.

9

23, 2004) (holding that a petitioner exercised due diligence even though he waited two months to inquire about the status of his appeal); Wims v. United States, 225 F.3d 186, 190 n.4 (2d Cir. 2000) (holding that a petitioner's five month delay in discovering that his lawyer had not filed an appeal was not "so clearly unreasonable that it plainly appears from the face of appellant's petition and supporting papers that he is barred from habeas relief"). This court, too, concludes that a two month delay is not outside the realm of due diligence.

Petitioner requested that Simmons, Sr. appeal directly after sentencing. Simmons, Sr. said that he would visit Petitioner in the Pitt County Detention Center. When Petitioner was moved from the Pitt County Detention Center to Tidewater Regional Jail on November 29, 2004, he called Simmons, Sr. to let Simmons, Sr. know that he would not be able to see Petitioner at the Pitt County Detention Center to discuss his appeal. After that telephone call, in which Simmons, Sr. stated that he would take care of the appeal, Petitioner thought that the appeal process had begun. Petitioner was then transferred again to Peterburg Detention Center on December 2, 2004. He was not released into the prison population until December 10, 2004, because there was an issue with his presentence report. As such, he had no opportunity to contact Simmons, Sr. during that time period. Once released into the general prison population, Petitioner called Simmons, Sr.'s office in mid-December and left a message with the secretary that he had not received any documentation regarding his appeal. Then in early January, Petitioner called Simmons, Sr. again to determine the status of his appeal, which is when he learned that an appeal had never been filed. Accordingly, Petitioner exercised due diligence and

10

Case 5:04-cr-00003-FL   Document 49   Filed 12/04/07   Page 10 of 15

reasonable efforts to determine the status of his appeal. See Aron v. United States, 291 F.3d 708, 712 (11th Cir. 2002) (noting that "due diligence . . . does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts").

Nonetheless, even if the court were to conclude that Petitioner, through the exercise of due diligence, should have discovered that Simmons Sr. had not filed an appeal earlier than January 2005, the earliest that he could have discovered that fact was after the expiration of the ten day appeals deadline, on December 3, 2004. Cf. Granger, 90 Fed. Appx. at 100 (concluding that although the petitioner "could have discovered his counsel's failure on [the date when the time for filing a notice of appeal had expired], to require [that the petitioner] do so ignores the reality of the prison system and imposes an unreasonable burden on prisoner's seeking to appeal"). Accordingly, the court concludes that Petitioner, through due diligence, should have learned and did learn that an appeal had not been filed in his case until January 2005.

Petitioner filed his Section 2255 motion on November 29, 2005.[1] The November 29, 2005 filing is less than one year from January 2005, when Petitioner, through due diligence, learned that Simmons, Sr. had not filed his appeal.[2] Accordingly, Petitioner's

---

[1] In Chief Judge Flanagan's April 20, 2007 Order, she held that Petitioner filed his pro se Section 2255 Motion on November 29, 2005. The order noted that although the court's docket reflects that he filed his motion on December 5, 2005, because of the mailbox rule, the court would construe the date of filing as November 29, 2005. See Houston v. Lack, 487 U.S. 266, 276 (988) (holding that a pros se prisoner's notice of appeal is filed when it is delivered to prison authorities for mailing to the district court).

[2] The November 29, 2005 deadline is also less than a year from December 3, 2004, which was the expiration of the 10-day appeals deadline in Petitioner's case, and

11

motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 was timely filed.

B. <u>Ineffective Assistance of Counsel</u>

Next, the court must consider whether Simmons Sr. provided ineffective assistance of counsel by failing to file Petitioner's appeal. Generally, analysis of an ineffective assistance of counsel claim requires application of the two-part test established by <u>Strickland v. Washington</u>, 466 U.S. 668, 690-94 (1984). First, the petitioner must show that his counsel's performance was deficient in that it fell below the standard of reasonably effective assistance. <u>Id</u>. at 687-691. Second, the petitioner must show that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. <u>Id</u>. at 694. However, in <u>United States v. Peak</u>, the Fourth Circuit held that if a client instructs his attorney to file an appeal, and the attorney fails to do so, the attorney's actions constitute ineffective assistance, notwithstanding the likelihood of success on appeal. 992 F.2d 39, 42 (4th Cir. 1993).

Here, there is sufficient evidence to establish that Petitioner did instruct Simmons, Sr. to file an appeal. Petitioner stated that he requested his attorney to appeal his sentence on numerous occasions. According to Petitioner's testimony, he first asked Simmons, Sr. to appeal his sentence directly after sentencing based on the adoption of the enhancement for assault on a government official.[3] Then, On November 29, 2004,

---

is the very earliest that Petitioner could have learned that his appeal had not been filed.

[3] Simmons, Sr. acknowledged that Petitioner was extremely agitated at the sentencing hearing over the enhancement issue and Simmons, Sr.'s failure to vigorously argue with the court that the enhancement did not apply.

12

approximately 13 days after sentencing and 6 days after the court entered the final judgment, Petitioner called Simmons, Sr. from jail again to request an appeal. At that time they also discussed the fee arrangement of $2,000. Petitioner testified that the conversation ended with Simmons, Sr. stating that he would take care of the appeal. Dr. Duck, Petitioner's grandmother also testified that she paid Simmons, Sr. $1,400 to work on Petitioner's appeal. She specifically stated that it was her understanding that the additional $1,400 would finance the appeal, and was not to be used for other legal work such as a Rule 35 motion.

Simmons, Sr. testified that the first time that Petitioner requested an appeal was in January or February 2005 and that the $1,400 was payment for his work on Petitioner's Rule 35 motion. However, Simmons, Sr. kept no records of any of his telephone conversations with Petitioner or other individuals involved in Petitioner's case after Petitioner's sentencing in November 2004. Accordingly, there is no documentary evidence to support Simmons, Sr.'s contention that he was paid the additional money to work on a Rule 35 motion for Petitioner. In addition, Simmons, Sr. could not remember receiving the certified letter with return receipt from Petitioner in February 2005, that explicitly requested an appeal to the Fourth Circuit, and the letter was not found in Simmons, Sr.'s files, although someone in his office accepted the letter. Moreover, Simmons, Sr. admitted at the hearing that he told Petitioner during the January 2005 telephone conversation that he had waived his right to appeal, thereby suggesting that he did not file an appeal because he did not think that Petitioner had viable issues to appeal. However, the Supreme Court has held that "when counsel's constitutionally deficient performance deprives a defendant

13

Case 5:04-cr-00003-FL   Document 49   Filed 12/04/07   Page 13 of 15

of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000). The plea agreement that Petitioner signed severely limits the issues that he can appeal. However, the Supreme Court and the Fourth Circuit have made clear that whether or not a petitioner has a likelihood of prevailing on the merits, if the petitioner asks his or her lawyer to appeal and the lawyer fails to do so, the petitioner has established prejudice sufficient for a claim of ineffective assistance to stand.

Therefore, because Simmons, Sr. kept no written records regarding Petitioner's case post sentencing, because Petitioner testified that he explicitly requested that Simmons, Sr. file an appeal directly after sentencing and shortly thereafter in a telephone conversation, and because Dr. Duck testified that she paid Simmons, Sr. $1,400 to appeal Petitioner's sentence, the court finds that Petitioner requested his attorney to appeal within ten days of the entry of the judgment but that his attorney failed to do so. Accordingly, the court concludes that Petitioner has satisfied his burden of establishing that he suffered a denial of his constitutional rights by a preponderance of the evidence when he requested that Simmons, Sr. appeal his sentence, which Simmons, Sr. never did. See Johnson v. Zerbst, 304 U.S. 458, 468 (1938).

In summary, it is the court's opinion that Petitioner exercised due diligence in determining that Simmons, Sr. had not filed an appeal in January 2005. Further, it is the court's opinion that Petitioner's motion to vacate, set aside, or correct his sentence was timely filed under the fourth prong of Section 2255. Finally, because the court credit's Petitioner's testimony that he requested Simmons, Sr. to appeal his case directly after

14

sentencing, it believes that Petitioner has established his ineffective assistance of counsel claim sufficient to necessitate a remand under <u>Flores-Ortega</u>. A rational and fair interpretation of the facts surrounding Petitioner's plea, the plea agreement, the sentencing hearing and post sentence conduct supports an ineffective assistance of counsel claim based on failure to notice an appeal. Accordingly, the court **RECOMMENDS** that Petitioner's 28 U.S.C. § 2255 claim for ineffective assistance of counsel based on a failure to file an appeal be granted.

## CONCLUSION

For the above reasons, this court **RECOMMENDS** that the District Court accept Petitioner's claim that he received ineffective assistance of counsel and remand for further proceedings. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days after receiving it to file written objections. Failure to file timely written objections bars or may bar an aggrieved party from receiving a <u>de novo</u> review by the District Court on an issue covered in the Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the District Court.

This 3rd day of December, 2007.

DAVID W. DANIEL
UNITED STATES MAGISTRATE JUDGE